24-1435 Women & Infants Hospital of RI v. NE Health Care Employees Union, Dist. 1199, SEIU Thank you, Counsel. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce himself on the record to begin? Good morning. May it please the Court, Timothy Baldwin on behalf of the Appellee, Women & Infants Hospital of RI. To continue the discussion on interlocutory appellate jurisdiction, we did not read the Union's motion as a motion to stay under 9 U.S. 3 or as a motion to compel arbitration under 9 U.S. C. 4. We read it as what it clearly stated in the motion as a motion for failure to exhaust contractual remedies, which we understood to be a motion brought under Section 301 of the MLRA. We also did not understand the motion to directly be seeking arbitration. Our reading of the motion, and we believe the District Court's reading of the motion, was that the Union was seeking the utilization of the agreements procedure, which we believe precedes the arbitration procedure. One of our arguments with respect to interlocutory appellate jurisdiction is that agreements is different from arbitration. There is no definition in the Federal Arbitration Act of what arbitration means. It's done through case law. This Court has one case, I believe it's called Fittek, which defines arbitration, and the definition of arbitration in that case is very different from the grievance procedure, which is in the collective bargaining agreement. Here's my problem with the argument. You've now gotten into the merits of whether this Section 301 claim should be dismissed or not. If we have no interlocutory jurisdiction, we don't get into the merits of that argument. Do we agree? Yes, if you don't have interlocutory jurisdiction, there's no substantive argument to agree to. Okay. And your brother has just said, essentially, we had no grievance until you brought the 301 action. So we tried to get rid of the 301 action, and I assume his intention later was to send something or other to arbitration. But if I'm right about Smith v. Spizzeri, is that how it's pronounced? I have seen that case, Your Honor. I don't know how to pronounce it either. I did see that that case was primarily about an automatic stay in the face of arbitration. In my view, it directly controls the issue in front of us. And it might well be a different matter if there had been a motion to compel arbitration and staying the 301 action. But that isn't what we were faced with. I'd like to just briefly touch upon one of the other issues with respect to interlocutory affidavit jurisdiction, and that is the pending jurisdiction issue with respect to the unfair labor practice charge. So the union's theory on that front is not that the denial of the motion to stay because of the unfair labor practice charge pending before the NLRB. They're not saying it's directly appealable on interlocutory appeal. They're essentially saying that because there's jurisdiction over the so-called FAA appeal, there is then also this jurisdiction over the denial of the motion to stay on the ULP charge. We just think that that is way beyond what I think Judge Shelley has called hence-seized rare for pendent appellate jurisdiction. It's just not within the scope because this court can clearly decide whether the issue of arbitrability exists or not without even looking at or touching the ULP issue. Let me ask a practical question. We rule that there's no appellate jurisdiction or the union reading the TLEs dismisses anticipating that. You're back in district court. The union then files a straightforward motion to compel arbitration. What then happens? Well, the district court has already ruled on the merits that the hospital does not have to grieve or arbitrate the dispute. So I'm just thinking this through. If that were to happen, we would point back to the district court's earlier decision. It would almost be like a motion. So that's what I was thinking, but then that suggests that effectively the court has already denied a motion to compel arbitration. Right. I think that would then raise an ancillary issue, which I don't think has been fully briefed yet, which is essentially what would control in that instance. Would that be controlled under law under the Section 301 of the MLRA, or would that be a straight Federal Arbitration Act analysis? I think there's case law pointing in both directions on that front. For example, the Second Circuit has clearly said that that's an MLRA issue. This court, I would say, in the Derwin case from 1983, I think suggests at the very least that the Section 301 law would apply in a situation like that. So it's a slightly different issue if the scenario plays out that was just hypothesized. It goes back. They then file a motion to compel arbitration, and certainly the district court's ruling would be informative, but each of you would have a chance to brief that issue now with a direct claim being made under the FAA. Yes, I think that's right. Another practical question. I'm trying to figure out what makes sense here. Why the union has not – there's a dispute, it seems to me. The union is doing things, and you want them not to do them. Well, it's essentially a pretty specific dispute with respect to the main gravamen of the complaint. Sure. So let's just take it as a given there's a dispute. Why can't the union just grieve that dispute right now and then arbitrate after the grievance? Well, our position would be what the district court ruled, which is respective breaches of the collective bargaining agreement, the no-strike provision. We believe that we don't have to grieve that dispute. We believe that we can go straight to the district court and file a Section 301 action for damages, which is what we did. And who would decide that, the arbitrator or the court? I think the court would decide whether or not the parties have agreed to arbitrate that dispute or not, meaning whether the collective bargaining agreement's provisions. That would then get at whether there's a distinction between you being able to initiate an arbitration as opposed to the union initiating an arbitration that you chose not to initiate. Right. So the four collective bargaining agreements that are attached to the complaint all give the right to initiate arbitration to the union. There is no specific right in the collective bargaining agreements for the employer to initiate arbitration. One of the issues in that case— Counsel, I'm sorry. Can I just ask you, so if they filed a grievance like Judge Kayada asked and you would say this grievance, we don't think it's grievable, right? You're saying that the grievance process doesn't apply. That's what you would say in response to the union. I think so, just based on the theory as pleaded in our complaint, which is essentially a breach of the collective bargaining agreement. Right, but if you did that, could the union then ask for arbitration? Yes, and I think we'd be in a position—again, I'm thinking out loud here. Right. I think we'd be in a position where we would probably move for a summary judgment or a declaratory judgment of something along those lines in the district court saying that that's not grievable or arbitrable under the circumstances. Yeah. I'm sorry. I interrupted you. Please go on. I have about a minute left. I would like to just stress some of the factual circumstances with respect to the unfair labor practice charge. As I was saying a little bit earlier, the main thrust of the complaint is for a breach of contract with a no-strike clause, essentially engaging in work stoppages with respect to holidays, and that's really the gravamen of the complaint and where the damages flow from. There is another portion of the complaint which mentions an unfair labor practice issue, and what happened there is in February of—I think it was 2023—the hospital's allegation is that a union representative came in and engaged in sort of hostile behavior. That then was the subject of a ULP. But there were subsequent work stoppages after that, and those are the work stoppages that we are alleging were breaches of the no-strike clause. So we're not bringing a specific allegation about the ULP. From our perspective, it's a completely separate event, and that's pleaded in, I believe it's paragraphs 23 to 25. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself back on the record? He has a two-minute rebuttal. Thank you, Your Honor. Mark Gerstein for the Appellant, District 1199. The reason that the Court's hypothetical questions make so much sense is because the more you look at the complaint and you think about this dispute, the more it's the kind of case that unions and management ought to resolve in their grievance and arbitration procedures. So what then, trial of grievance? Well, that certainly is an option. We were sued, and we answered the complaint. Certainly the possibility of a motion to compel arbitration or to stay, go back to the District Court and do that. Sometimes, as labor lawyers, we are properly criticized for trying to cut to the chase. This was a case about a... You understand appellate courts are constrained by rules about interlocutory jurisdiction, and your case is different from ours. More today than ever, Judge. But I do think that as you think about this dispute and what kind of a dispute it is, what does holiday work require? What does union access require? What is a contract that actually doesn't even name the union in the new strike laws? It prohibits employees from starting. What does this mean? Those questions belong in front of an arbitrator. They don't belong here. They don't belong in the District Court. Thank you. Thank you, counsel. That concludes argument in this case.